UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WEST BEND INSURANCE COMPANY,

    Plaintiff,

    v.

DANIEL BENSON, et al.,

    Defendants.

Case No. 3:24-CV-405-CCB

## **OPINION AND ORDER**

Before the Court is Plaintiff West Bend Insurance Company's ("West Bend")

Motion for Summary Judgment against all Defendants. (ECF 31). Defendants Daniel

Benson and Janet Benson ("the Bensons") oppose this motion. (ECF 35). Defendant

Newton & Sons Excavating, Inc. ("Newton & Sons") has not responded, nor appeared

in this litigation. The Court grants summary judgment as to the Bensons and denies it as

to Newton & Sons.

### I.      RELEVANT BACKGROUND

This is an insurance case. It arises from a negligence suit filed by the Bensons

against Newton & Sons and other defendants in Indiana state court. In the underlying

negligence suit, the Bensons seek damages against Newton & Sons based on allegations

that Newton & Sons failed to properly install a lateral sewer line, later resulting in

damage to the Bensons' property. (ECF 6-1). In this case, West Bend, which insured

Newton & Sons at the time of the installation but not at the time of the damage to the

Bensons' property, seeks a declaratory judgment that it has no duty to defend or indemnify Newton & Sons in the underlying suit.

The undisputed material facts are these: The Bensons own a residence on Barbee Lake in Warsaw, Indiana. (ECF 31-1 ¶ 9). Their property and a residence owned by John and Patricia Duncan ("the Duncans") are connected to a low-pressure sewer system owned and/or operated and/or maintained by Lakeland Regional Sewer District. (*Id.* ¶ 10). Wastewater from the Benson property and the Duncan property flowed through a sewer lateral from each property to a shared underground collection tank ("the Grinder Station"). (*Id.* ¶ 11–12). From there, liquified waste was pumped to the sewer main and on to a wastewater treatment plant. (*Id.* ¶ 11).

In 2017, Newton & Sons installed the sewer lateral from the Benson property to the Grinder Station. (*Id.* ¶ 13). Newton & Sons did not install a backflow or check valve to prevent a backup. (ECF 36 at 58). In May 2023, Benjamin Benson, the Bensons' son, arrived at the Benson property to open it for the summer season. (ECF 31-1 ¶ 14). He discovered that raw sewage had entered the property, filling it with wastewater and causing mold growth to cover the floors, walls, ceilings, furnishings, and elsewhere. (*Id.* ¶ 15). No raw sewage or wastewater had been present, nor was there any damage from sewage, when the Bensons were last at the property in 2022. (*Id.* ¶ 16).

Upon making this discovery, Benjamin Benson followed the instructions on the control panel of the Grinder Station and contacted Astbury Water Technology, Inc.

("Astbury").[1] (ECF 31-2 ¶ 20). Astbury is a company that provided certain wastewater services to regional sewer districts. (*Id.* ¶ 4). When the Astbury representative arrived at the Benson property shortly after Benjamin Benson contacted Astbury, the representative discovered that there was no power to the Grinder Station pump and the fuses attached to the post under the control panel had not tripped. (*Id.* ¶ 22). The Astbury representative then went inside the Duncans' residence and discovered the Duncans' circuit breaker, which fed the Grinder Station, had been tripped. (*Id.* ¶ 23). The representative reset the circuit breaker, and power returned to the Grinder Station from the Duncan property. (*Id.* ¶ 24). Once power was restored, an alarm sounded and lights flashed on the equipment at the Grinder Station, indicating the pump within the Grinder Station was inoperable. (*Id.* ¶ 25). The Astbury representative then removed and replaced the Grinder Station pump. (*Id.* ¶ 26).

On or about July 24, 2023, the Kosciusko County Health Department condemned the Benson property, declaring it unfit for human habitation due to unsanitary conditions caused by the presence of sewage and mold. (ECF 31-1 ¶ 18). On or about November 9, 2023, the Bensons filed the complaint in the underlying case, alleging that Newton & Sons breached its duty to skillfully, properly, and/or carefully install the sewer lateral line from the Benson property to the Grinder Station. (ECF 31-1 ¶ 3; ECF

---

[1] This and many of the following statements of fact are supported by citations to the Bensons' complaint in the underlying suit, as opposed to discovery responses, depositions, or other admissible fact evidence. Because these facts are undisputed by the parties, the Court accepts them as true for purposes of summary judgment. *See* N.D. Ind. L.R. 56-1(g).

31-2 ¶¶ 38–39). They also alleged that Newton & Sons breached this duty by failing to exercise reasonable care in the installation of the sewer lateral line, including, without limitation, by failing to provide for appropriate backflow prevention and/or check valve protection, thereby causing significant damage to, and total destruction of, the Benson property. (ECF 31-2 ¶¶ 38–39).

West Bend issued commercial insurance policies to Newton & Sons that were effective from October 12, 2016, until October 12, 2021. (ECF 31-3; ECF 31-4; ECF 31-5; ECF 31-6; ECF 31-7). Each of these policies included language providing that West Bend would

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(*Id.*) The policies further provide that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: . . . the 'bodily injury or 'property damage' occurs during the policy period." (*Id.*) The policies define "property damage" as

> a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.*) Lastly, they define "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477* U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). But the Court will not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor will the Court conduct research or develop arguments for the parties. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

To survive summary judgment, the nonmovant "cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir.

5

2016). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.   ANALYSIS

West Bend moves for summary judgment on the basis that there is no genuine dispute of material fact as to whether its insured, Newton & Sons, caused property damage during the time West Bend's policy was active. The Bensons respond by arguing that Newton & Sons' failure to install the check valve was property damage, and therefore West Bend must indemnify and defend Newton & Sons for the damage resulting from that occurrence.

Both parties agree that Indiana substantive law applies here. Under Indiana law, "[t]he construction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *State Farm Mut. Auto Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind. Ct. App. 1994). Insurers are free to limit the coverage of their policies, but such limitations are only enforceable if clearly expressed. *W. Bend Mut. V. Keaton*, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001) (citation omitted). When interpreting an insurance policy, the goal of the Court is to ascertain and enforce the parties' intentions. *Rice v. Meridian Ins. Co.*, 751 N.E.2d 685, 688 (Ind. Ct. App. 2001). If unambiguous, the policy language will be given its plain and ordinary meaning. *McClain v. Madison Nat.*

6

*Life Ins. Co.*, 2014 WL 4377458, at *16 (N.D. Ind. Sep. 4, 2014) (citing *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012)). But where policy language is ambiguous, the policy is to be "construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Allstate Ins. Co v. Dana Corp.*, 759 N.E.2d 1049, 1056 (Ind. 2001). An ambiguity exists if a provision of the policy is susceptible to more than one reasonable interpretation. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). But the parties' different interpretations of policy language are not enough to create ambiguity on their own. *Id.*

### a. Summary Judgment Against the Bensons

West Bend argues that its policies do not provide liability coverage to Newton & Sons because the damage to the Benson property did not occur within the policies' coverage period. In support, it argues that Newton & Sons' failure to install the check valve in 2017 when it installed the sewer lateral from the Benson property to the Grinder Station was not property damage. Thus, West Bend argues, its active coverage policy during that period did not cover that occurrence, and consequently did not cover the ultimate destruction of the Benson residence. The Bensons respond that Newton & Sons' failure to install the check valve was property damage as defined by West Bend's policy, and therefore West Bend covered that occurrence and the damage stemming from it.

When coverage under an insurance policy is triggered by a specific occurrence, Indiana law looks not to "the time the wrongful act was committed but the time when

the complaining party was actually damaged." *U.S. Fid. & Guar. Co. v. American Ins. Co,*

*345 N.E.2d 267, 270 (Ind. Ct. App. 1976).* Working from a fact pattern where defective

bricks were used in a residential home, the *U.S. Fidelity* Court opined that "the

insurance company providing products liability coverage at the time the [defect in the

bricks] first becomes apparent is responsible for all damage or loss to the structure." *Id.*

West Bend argues first that coverage was not triggered in this case until the

sewage backflow event that destroyed the Benson home. In support, it points the Court

to the case of *Grange Mutual Casualty Co. v. West Bend Mutual Insurance Co.,* 946 N.E.2d

593 (Ind. Ct. App. 2011). That case involved the installation of a fractured pipe into an

underground storm drainage system and the subsequent flooding to a school caused by

the pipe fracture. *Id.* at 594. West Bend insured the installing contractor at the time of

installation, and Grange Mutual Casualty Company insured the contractor at the time

the flooding occurred. *Id.* West Bend argued that it had no duty to indemnify the

contractor because there were two distinct occurrences: (1) the fracture of the pipe, and

(2) the flooding. *Id.* at 595. Because the fracture of the pipe did not lead to flooding

during its coverage period, West Bend contended that its policy coverage was not

triggered, and it had no duty to indemnify the contractor. *Id.*

The Indiana Court of Appeals disagreed. Though "the damages resulting from

[the contractor's] negligence became apparent only after they evolved over time," it

found that "some damage clearly resulted when the drain pipe was fractured, which

was within West Bend's policy period." *Id.* at 596. Because "the storm drain was

damaged . . . during the West Bend policy period," the Court of Appeals determined that West Bend's policy "covers all damages that flowed from the original damage, including the extensive flood damage." *Id.*

Here, West Bend argues that there was no damage analogous to the fracture of the drainpipe in *Grange Mutual.* Though undisputed that Newton & Sons failed to install the check valve in 2017, West Bend's coverage of Newton & Sons concluded in late 2021, and the Bensons admit that there was no property damage when they left their property in 2022. Furthermore, neither party argues that Newton & Sons broke any component of the sewer system. On that basis, West Bend asks the Court to determine as a matter of law that no property damage within the meaning of the policy occurred before West Bend's coverage of Newton & Sons concluded.

The Bensons respond that West Bend's interpretation of property damage is too narrow. In support, they point the Court to the policy definition of "property damage." Property damage, per the policy, may either be (1) "[p]hysical injury to tangible property, including all resulting loss of use of that property," or (2) "[l]oss of use of tangible property that is not physically injured." (ECF 35 at 3). Under these definitions, they argue that Newton & Sons' failure to install the necessary check valve was a physical injury to the sewer lateral, or alternatively, a deprivation of the use of the backflow valve. They ask the Court to take a different interpretation of *Grange Mutual,* arguing that the failure to install the check valve, like the fracturing of a pipe, was a triggering event for West Bend's coverage.

9

The narrow question before the Court is whether Newton & Sons' failure to install the check valve constituted property damage under the policy. Narrow though this question is, the cases cited by the parties do not offer an immediate answer. It is true that the Bensons fail to identify any single part of the sewer system that was itself physically damaged by Newton & Sons. It is also undisputed that the sewer lateral operated with no apparent problems until after the conclusion of the coverage period in 2021. But, as the Bensons point out, the check valve's purpose was to prevent backflow. Until a backflow event occurred, the alleged physical damage to the sewer lateral would not be obvious. Though the general rule of *U.S. Fidelity* would suggest that coverage was not triggered until the damage to the system became "apparent," 345 N.E.2d at 270, the more specific holding of *Grange Mutual* is of some help to the Bensons: if the exclusion of the check valve, like the fracturing of a pipe, damaged the system in a nonobvious but nonetheless physical way, coverage may have been triggered. To prove this, though, the Bensons must be able to produce some evidence of actual damage at the time Newton & Sons installed the sewer lateral.

They cannot. Though it is undisputed that at some point the Grinder Station sustained damage, there is no evidence before the Court of damage to the sewer lateral. The Bensons do not even allege damage to the lateral itself, relying instead on the mere absence of the check valve. At most, the absence of the check valve is evidence that the lateral was defective. But a product constructed in a defective manner, like the bricks in *U.S. Fidelity*, only triggers property damage coverage when the defect "becomes

10

apparent." 345 N.E.2d at 270; *cf. Hamilton Die Cast Inc. v. U.S. Fid. & Guar. Co.*, 508 F.2d 417, 419 (7th Cir. 1975) (finding unpersuasive the "inventive, if farfetched" argument that "property damage" occurred when tennis rackets were built with "defective" frames). Here, it is undisputed that damage from the lack of a check valve did not become apparent until the backup occurred sometime after 2021. Thus, the exclusion of the check valve was not physical property damage.

The Bensons alternatively argue that property damage occurred because they were deprived of the use of the check valve. This argument fails. The purpose of the check valve was to prevent backflow. Both parties agree that there was no sewage damage from backflow until some point in 2022 at the earliest. And no evidence suggests that the sewer lateral did not operate as expected up until the backflow event. Furthermore, West Bend points out that Mr. Benson's affidavit includes the sworn statement that he saw "there was no backflow or check valve installed in our sewer lateral." (ECF 36 at 58). The Bensons could not have been deprived of the use of a valve that they knew from the beginning they did not have and that served no purpose during the normal operation of the sewer lateral throughout the coverage period.

Thus, there are no genuine issues of material fact and summary judgment for West Bend against the Bensons is appropriate.

### b. Summary Judgment Against Newton & Sons

West Bend also seeks summary judgment against Newton & Sons. But Newton & Sons has neither answered West Bend's complaint nor appeared in this lawsuit. Thus,

the appropriate remedy against Newton & Sons is a motion for default judgment. *See* Fed. R. Civ. P. 55.

**IV.    CONCLUSION**

For these reasons, the Court **GRANTS** West Bend's motion for summary judgment (ECF 31) as to the Bensons and **DENIES** it **WITHOUT PREJUDICE** as to Newton & Sons.

SO ORDERED on March 24, 2026.

_/s/ *Cristal C. Brisco*_
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

12